IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 18-00036-08-CR-W-BCW |
| ) | |
| ANTHONY PELTIER, ) | |
| ) | |
| Defendant. ) | |

ORDER

This matter is currently before the Court on defendant Anthony Peltier's Motion for Severance From Capital Co-Defendants (Doc. #432). For the reasons set forth below, this motion is granted.

I. INTRODUCTION

On November 14, 2017, a one-count Indictment was filed against defendant Anthony Peltier in Case No. 17-00349-01-CR-W-HFS. The Indictment charged defendant Peltier with being a felon in possession of a firearm from August 2015 to October 8, 2015. Defendant Peltier had an initial appearance in Case No. 17-00349 on December 7, 2017.

On February 20, 2018, an Indictment was filed against defendants Shawn Burkhalter, Joshua Nesbitt, Joslyn Lee,[1] Nickayla Jones, Autry Hines, Rachel Ryce, and Sharika Hooker in Case No. 18-00036-01/07-CR-W-BCW. Defendant Peltier, while not charged in this Indictment, was referenced as an unindicted co-conspirator. (*See* Doc. #432 at 2.)

---

[1]Defendant Lee entered a guilty plea on February 6, 2019.

On July 30, 2019, a fifteen-count Superseding Indictment was filed against defendants Shawn Burkhalter, Joshua Nesbitt, Nickayla Jones, Autry Hines, Rachel Ryce, Sharika Hooker, and Anthony Peltier in Case No. 18-00036-01/08-CR-W-BCW.[2] On July 30, 2019, the government also filed a Notice of Intent to Seek the Death Penalty against defendants Burkhalter and Nesbitt.

Defendant Peltier is charged in two counts of the Superseding Indictment, that is Count One (Illegal Drug Distribution Conspiracy) and Count Ten (Accessory After the Fact (Murder)). The other defendants remaining for trial, Shawn Burkhalter, Joshua Nesbitt, and Autry Hines,[3] face the following charges:

- Count One (Illegal Drug Distribution Conspiracy)–defendants Burkhalter, Nesbitt, and Hines;
- Count Two (Cocaine Possession/Distribution)—defendants Burkhalter and Nesbitt;
- Count Three (Discharge of Firearm in Furtherance of Drug Trafficking Crime)—defendants Burkhalter and Nesbitt;
- Count Four (Marijuana Possession/Distribution)—defendants Burkhalter, Nesbitt, and Hines;
- Count Five (Discharge of Firearm in Furtherance of Drug Trafficking Crime)—defendants Burkhalter, Nesbitt, and Hines;
- Counts Six and Seven (Murder Resulting From the Use of Firearm in Crime of Violence or Drug Trafficking Crime)—defendants Burkhalter and Nesbitt;
- Count Eight (Witness and Evidence Tampering Conspiracy)—defendants Burkhalter, Nesbitt, and Hines;
- Count Nine (Murder of Potential Witness)—defendants Burkhalter and Nesbitt;
- Count Ten (Accessory After the Fact (Murder))—defendant Hines;
- Count Eleven (Witness and Evidence Tampering)—defendants Burkhalter and Nesbitt;
- Count Twelve (Witness and Evidence Tampering)—defendant Burkhalter;

---

[2] Defendants Jones, Ryce, and Hooker have entered guilty pleas to charges in the Superseding Indictment.

[3] Defendant Autry Hines had a change-of-plea hearing scheduled for September 15, 2020, but said hearing was cancelled to be reset at a later date.

- Count Thirteen (Robbery Affecting Interstate Commerce)—defendants Burkhalter and Nesbitt;
- Count Fourteen (Brandishing of Firearm in Furtherance of Crime of Violence)—defendants Burkhalter and Nesbitt; and
- Count Fifteen (Felon in Possession of a Firearm)—defendants Burkhalter and Nesbitt.

Count One of the Superseding Indictment, the only count that defendant Peltier has in common with defendants Burkhalter and Nesbitt, provides as follows:

1. From a date unknown to the Grand Jury but no later than 2008, up to and including February 20, 2018, in the Western District of Missouri and elsewhere, SHAWN BURKHALTER, a/k/a "Deuce," JOSHUA NESBITT, a/k/a "T," NICKAYLA JONES, a/k/a "Red," AUTRY HINES, a/k/a "Bud," RACHEL RYCE, and ANTHONY PELTIER, a/k/a "A-1," the defendants, together with Joslyn Lee, a/k/a "Bless," and others known and unknown to the Grand Jury, did knowingly and intentionally combine, conspire, confederate and agree together and with each other to violate the controlled substance laws of the United States.

2. It was a part and an objective of the conspiracy that the defendants and their co-conspirators would and did distribute and possess with intent to distribute a quantity of a mixture and substance containing a detectable amount of cocaine, a schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C).

3. It further was a part and an objective of the conspiracy that the defendants and their co-conspirators would and did distribute and possess with intent to distribute a quantity of a mixture and substance containing a detectable amount of marijuana, a schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(D).

Overt Acts

4. In furtherance of the conspiracy and to achieve the illegal objectives thereof, the following overt acts, among others, were committed in the Western District of Missouri and elsewhere:

  a. On or about August 16, 2015, in Lawrence, Kansas, SHAWN BURKHALTER, ANTHONY PELTIER and Joslyn Lee distributed a quantity of cocaine;

  b. On or about September 10, 2015, in Raytown, Missouri, SHAWN BURKHALTER and JOSHUA NESBITT robbed a quantity of

3

cocaine, and in the process NESBITT shot and killed Danny Lamont Dean with a Rock River Arms, Model AR-15, 5.56 caliber semiautomatic rifle, bearing serial number KT1143219;

  c. On or about September 14, 2015, in Kansas City, Missouri, SHAWN BURKHALTER fled from police officers;

  d. On or about October 2, 2015, in Kansas City, Missouri, SHAWN BURKHALTER fled from police officers and possessed baggies with marijuana residue; and

  e. On or about October 4, 2015, in Kansas City, Missouri, JOSHUA NESBITT, NIKAYLA JONES, AUTRY HINES, RACHEL RYCE and Joslyn Lee robbed a quantity of marijuana, and in the process NESBITT shot and killed Anthony Dwayne Johnson with a Rock River Arms, Model AR-15, 5.56 caliber semiautomatic rifle, bearing serial number KT1143219, all of which was at the direction of SHAWN BURKHALTER.

All in violation of Title 21, United States Code, Section 846.

(Superseding Indictment at 4-5; Doc. #239.)

Count Ten of the Superseding Indictment, the other count brought against defendant Peltier, provides as follows:

  18. From on or about October 4, 2015, up to and including on or about December 2, 2015, in the Western District of Missouri and elsewhere, NICKAYLA JONES, a/k/a "Red," AUTRY HINES, a/k/a "Bud," RACHEL RYCE, SHARIKA HOOKER and ANTHONY PELTIER, a/k/a "A-1," the defendants, together with Joslyn Lee, a/k/a "Bless," knowing that an offense against the United States had been committed, namely, the offenses charged in Counts Seven[4] and Nine[5] of this Indictment, did assist the offenders in order to hinder and prevent their apprehension, trial and punishment, to wit, JONES, HINES, RYCE, PELTIER and Lee assisted SHAWN BURKHALTER, a/k/a "Deuce," and JOSHUA NESBITT, a/k/a "T," by among other things taking steps to locate, remove, hide and destroy evidence pertaining to the murder of Anthony Dwayne Johnson, and HOOKER

---

[4]Count Seven charges defendants Burkhalter and Nesbitt with the murder of Anthony Dwayne Johnson resulting from the use of a firearm during and in relation to the illegal drug distribution conspiracy charged in Count One.

[5]Count Nine charges defendants Burkhalter and Nesbitt with the murder of Anthony Dwayne Johnson, a potential witness.

4

assisted BURKHALTER and NESBITT by among other things providing NESBITT with sanctuary and money after the murder of Anthony Dwayne Johnson.

All in violation of Title 18, United States Code, Section 3.

(Superseding Indictment at 12-13; Doc. #239.)

Defendant Peltier first appeared in Case No. 18-00036 on August 7, 2019. At that time, the case was set for trial on the joint criminal jury trial docket commencing December 2, 2019. On November 25, 2019, defendant Peltier signed a Motion for Continuance requesting that both Case No. 17-00349 and Case No. 18-00036 be continued to the joint criminal jury trial docket commencing March 16, 2020.

On January 22, 2020, the Government and defendants Burkhalter, Nesbitt, Jones, and Hines filed a Joint Proposed Schedule (Doc. #351) which provided January 4, 2022, as an agreed date for the commencement of the guilt phase of the trial. A status conference was held on February 19, 2020, to discuss the proposed schedule. At that conference, counsel agreed that the Court should consider the Joint Proposed Schedule as a motion to continue the trial. The Court asked each defendant whether he/she agreed to the proposed trial date of January 4, 2022. Defendant Burkhalter chose not to respond to the Court's inquiry. Defendants Nesbitt and Peltier objected to the proposed trial date. Defendants Jones and Hines had no objection. The Court granted the continuance finding that it would be unreasonable to expect defense counsel to prepare this case adequately for trial prior to January 4, 2022, given the volume of discovery and the complexities involved in a capital case. The continuance order also stated, "The Joint Proposed Schedule sets March 27, 2020, as the deadline for non-capital defendants to file severance motions. If the non-capital defendants are severed from the capital defendants, the non-capital defendants will be set on an earlier trial docket." (Doc. #384 at 2, n. 3.)

5

Case 4:18-cr-00036-BCW   Document 590   Filed 10/14/20   Page 5 of 12

On February 24, 2020, Case No. 17-00349 was continued to the joint criminal jury trial docket commencing January 10, 2022, at defense counsel's request, "[a]s case 17-00349 is inextricably intertwined with 18-00036." (Doc. #39 in Case No. 17-00349-01-CR-W-HFS.)

On March 17, 2020, Case No. 17-00349 was transferred for all further proceedings to the Honorable Brian C. Wimes as it involves overlapping conduct with Case No. 18-00036.

## II. DISCUSSION

### A. Joinder of Defendants

Rule 8(b), Federal Rules of Criminal Procedure, establishes the requirements for joinder of defendants. Defendants are permitted to be joined where "'they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses.'" *See United States v. Donnell*, 596 F.3d 913, 922 (8th Cir. 2010) (quoting Federal Rule of Criminal Procedure 8(b)). Defendant Peltier does not argue that he is not properly joined with the other defendants.

### B. Prejudice

"'When defendants are properly joined, there is a strong presumption for their joint trial, as it gives the jury the best perspective on all of the evidence and therefore increases the likelihood of a correct outcome.'" *United States v. Casteel*, 663 F.3d 1013, 1018 (8th Cir. 2011) (quoting *United States v. Lewis*, 557 F.3d 601, 609 (8th Cir. 2009)).[6] However, even when defendants are

---

[6] The government cites the case of *United States v. Fernandez*, 388 F.3d 1199, 1242 (9th Cir. 2004), for the proposition that when defendants are charged with conspiracy, a joint trial is particularly appropriate. (Government's Response at 24; Doc. #468.) However, the Court notes that in *Fernandez*, the court stated that it had previously severed the death-eligible defendants from the non-capital defendants. 388 F.3d at 1215, 1242. The court's statement that a joint trial is particularly appropriate where co-defendants are charged with conspiracy was in response to motions to sever the non-capital defendants from each other. *Id.* at 1242. The Court further notes that after the government decided to seek the death penalty against only one of the

6

properly joined, Rule 14, Federal Rules of Criminal Procedure, permits severance where joinder would result in unfair prejudice to a defendant. The decision to sever lies in the district court's discretion. *See Zafiro v. United States*, 506 U.S. 534, 541 (1993); *United States v. Young*, 753 F.3d 757, 778 (8th Cir. 2014); *United States v. Sandstrom*, 594 F.3d 634, 644 (8th Cir. 2010).

Defendant Peltier argues that he would be prejudiced by a joint trial. Specifically, defendant Peltier states:

> 1. Mr. Peltier will continue to suffer from the oppressive pretrial detention. He has been in jail for two years already;
>
> 2. The anxiety and uncertainty has taken a toll on Mr. Peltier. Mr. Peltier has never been alleged to face the possible sentences of the capital defendants or many of the other co-defendants. His maximum penalty on Count 1 is not more than 20 years and for Count 10, not more than 15 years. He would like to be able to defend himself against the pending charges and hopefully be reunited with his family; and
>
> 3. The offenses alleged against Mr. Peltier occurred between August and October of 2015, nearly five years ago. By the proposed trial date nearly seven years will have past [sic]. Mr. Peltier's ability to defend himself had already been compromised by the passage of time from the date of occurrence to the date charges were filed on November 14, 2017. The additional passage of time continues to impair his defense.

(Motion for Severance From Capital Co-Defendants at 6-7; Doc. #432.) Defendant Peltier contends that both the Sixth Amendment and the Speedy Trial Act support his request for a severance so that his case may move at a swifter pace than that of his capital co-defendants.. (*Id.* at 7.)

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. In evaluating a Sixth Amendment claim for pretrial delay, the Court considers four factors: (1) the length of delay;

---

death-eligible defendants, that defendant was severed from the other previously death-eligible defendants. *Id.* at 1242 n. 28.

7

(2) the reason for delay; (3) whether the defendant asserted the right to a speedy trial; and (4) prejudice to the defendant. *See Barker v. Wingo*, 407 U.S. 514, 530 (1972); *United States v. Jenkins-Watts*, 574 F.3d 950, 966 (8th Cir. 2009); *United States v. Titlbach*, 339 F.3d 692, 699 (8th Cir. 2003). "A delay approaching one year may meet the presumption of prejudicial delay and require the application of the other factors." *Jenkins-Watts*, 574 F.3d at 966. With respect to prejudice, the *Barker* court stated:

> . . . Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown.

407 U.S. at 532 (footnote omitted).

Under the Speedy Trial Act, a defendant's trial must commence within seventy days of his indictment or initial appearance, whichever is later. 18 U.S.C. § 3161(c)(1). However, section 3161(h) provides for exclusions from the time calculation within which the trial must commence, including periods of delay resulting from a continuance granted by the court upon a finding that the ends of justice served by taking such action outweigh the best interest of the public and the defendants is a speedy trial. *See* 18 U.S.C. § 3161(h)(7)(A). The court in *United States v. George*, Criminal Action No. 17-201, 2019 WL 4194526, at *12 (E.D. La. Sept. 4, 2019), a case in which three defendants faced the death penalty while three defendants did not, provided the following with respect to delays under the Speedy Trial Act:

> Delays under the Speedy Trial Act are subject to a "reasonableness inquiry," which examines both the "totality of the circumstances of the case prior to

trial" and the "actual prejudice suffered by the [defendant] as a result of the Section 3161(h)(7)] exclusion." Such prejudice may include excessive pretrial incarceration or impairment of the defendant's ability to defend himself. In a case with codefendants, courts must weigh these considerations against the "efficient use of prosecutorial and judicial resources in trying multiple defendants in a single trial."

*Id.* at *12 (citations omitted).

The *George* court provided the following analysis as to a motion to sever filed by one of the non-capital defendants (Jeremy Esteves) which is pertinent to the severance issue pending before this Court:

> Weighing the *Barker* factors and the reasonableness of delay for the purpose of trying the capital and non-capital defendants jointly, the Court finds that an additional delay of Esteves's trial in order to have Esteves tried with the capital defendants would violate his speedy trial rights under the Sixth Amendment and the Speedy Trial Act.
>
> Esteves has been detained since November 13, 2017. As of his presently scheduled trial date of November 4, 2019, Esteves will have been incarcerated for two years; if he is tried on the capital defendants' new trial date of September 14, 2020, his period of pretrial incarceration will amount to thirty-four months.
>
> Under *Barker*, the length of delay, the reasons for the delay, and Esteves's assertion of his right to a speedy trial weigh toward a presumption of prejudice, which the government has not effectively rebutted. With respect to the second *Barker* factor, the reasons for the delay do not weigh against Esteves. *See Maples v. Stegall*, 427 F.3d 1020, 1026-29 (6th Cir. 2005) (concluding that second *Barker* factor "tip[ped] strongly in [defendant]'s favor" because trial delay, for which defendant was minimally responsible, was primarily caused by codefendant's requests for continuances, as well as the court's "unjustified delay" in ruling on codefendant's late-filed motion). The Court granted previous continuances of the joint trial to allow the capital defendants more time to conduct their mitigation investigations and gather evidence for the penalty phase of the proceedings. The most recent continuance is warranted for the same compelling reasons. Unlike the capital defendants, however, Esteves is not in the process of collecting mitigation evidence, and both his counsel and the government have indicated that they are prepared to go to trial on November 4, 2019. Moreover, as Esteves asserts, the passage of time may impair Esteves's ability to adequately prepare for his defense. Esteves previously raised this concern in November 2018 in his first opposition to a continuance based on his speedy trial rights—the third *Barker* factor—and it is no less salient today.

9

The government has also not presented any evidence to rebut the presumption of prejudice against Esteves's constitutional right to a speedy trial. The government's argument against severance on speedy trial grounds refers to the Court's December 2018 order denying Esteves's first motion for severance, but the circumstances have changed since then. Further delay of trial for Esteves may intensify the prejudice against him. *See* [*Doggett v. United States*, 505 U.S. 647, 652 (1992)]. When the government chose a capital path against three of the six defendants charged in the second superseding indictment, it should have anticipated the potential delay-of-trial issues that could negatively affect the non-capital defendants.

Under the Speedy Trial Act, the "totality of the circumstances prior to trial" and the "actual prejudice suffered" by Esteves also support the conclusion that additional delay would not be reasonable. *See* [*United States v. Franklin*, 148 F.3d 451, 457 (5th Cir. 1998)]. A joint trial with the capital defendants on September 14, 2020 would extend Esteves's pretrial incarceration by ten months. While a continuance is warranted for the capital defendants to adequately prepare their defenses against the death penalty, Esteves was prepared to go to trial as early as January 28, 2019. Furthermore, the government affirmed that it will be ready for trial on November 4, 2019.

Therefore, the Court finds that considerations with respect to Esteves's right to a speedy trial under the Sixth Amendment and the Speedy Trial Act warrant a trial for Esteves on the presently scheduled trial date of November 4, 2019. . . .

*United States v. George*, Criminal Action No. 17-201, 2019 WL 4194526, at *13-14 (E.D. La. Sept. 4, 2019) (footnotes omitted). *See also United States v. Byrd*, 466 F.Supp.2d 550, 553 (S.D.N.Y. 2006) (defendant not eligible for death penalty severed from death-eligible defendants due to speedy trial concerns); *United States v. Ayala Lopez*, 319 F.Supp.2d 236, 238 (D.P.R. 2004) (non-capital defendants severed from capital defendant in part because time needed to prepare capital defense infringed upon non-capital defendants' rights to speedy trial.)

With respect to the first *Barker* factor, defendant Peltier initially appeared in Case No. 17-00349[7] on December 7, 2017, and in Case No. 18-00036 on August 7, 2019. The 18-00036

---

[7]While the Court acknowledges that Case No. 17-00349 is not joined for trial with Case No. 18-00036, the Court finds the time that Case No. 17-00349 has been pending against defendant

case is set for trial on January 4, 2022. Thus, the delay in trial exceeds one year, meeting the presumption of prejudicial delay and requiring the Court to look to the other factors. The reason for the delay, the second factor, does not weigh against defendant Peltier. As in *George*, the delay is due to counsel for the capital defendants' request for a setting that allows adequate time to prepare the case for trial given the volume of discovery and the complexities involved in a capital prosecution. As to the third factor, defendant Peltier asserted the right to a speedy trial when he objected to continuing the case from the joint criminal jury trial docket commencing March 16, 2020, during the status conference held on February 19, 2020. As in *George*, the length of delay, the reasons for the delay, and Peltier's assertion of his right to a speedy trial weigh toward a presumption of prejudice. Finally, with respect to the fourth factor, defendant Peltier, like defendant Esteves in the *George* case, argues that the passage of time may impair his ability to adequately defend his case. As of today, almost three years have passed since defendant Peltier was indicted in Case No. 17-00349, a case that defense counsel states cannot be resolved independent of Peltier's charges in Case No. 18-00036, and over a year has passed since Peltier was indicted in Case No. 18-00036. A trial date in January 2022 (or later[8]) may further impair

---

Peltier pertinent given that the government has stated that the two cases involve overlapping conduct (Notice of Related Cases at 1; Doc. #41 in Case No. 17-00349) and defense counsel has described the two cases as "inextricably intertwined" (Motion for Severance From Capital Co-Defendants at 2; Doc. #432). During a hearing held on July 15, 2020, in Case No. 17-00349, government counsel stated that Case No. 17-00349 has "essentially been consolidated" with Case No. 18-00036. During that same hearing, counsel for defendant Peltier advised that it would be "nearly impossible" to resolve the 17-00349 case independent of the 18-00036 case.

[8]On October 8, 2020, counsel for defendants Burkhalter and Nesbitt filed a Status Report (Doc. #587) in which they seek to maintain the suspension of the scheduling order given their inability to prepare the case because of the pandemic. Counsel advise that Federal Death Penalty Act cases around the country have been continued and/or had scheduling orders suspended because of the pandemic. (*Id.* at 24.)

Peltier's ability to defend his case. The government states that it is and has been ready for trial. (Government's Response at 30; Doc. #468.)

This Court agrees with the position of the *George* court where it found: "When the government chose a capital path against [only some] of the . . . defendants charged in the . . . superseding indictment, it should have anticipated the potential delay-of-trial issues that could negatively affect the non-capital defendants." *United States v. George*, Criminal Action No. 17-201, 2019 WL 4194526, at *14 (E.D. La. Sept. 4, 2019). Considerations with respect to defendant Peltier's right to a speedy trial under the Sixth Amendment and the Speedy Trial Act warrant a trial for defendant Peltier at an earlier date than the trial of those defendants facing capital prosecution.

### III. CONCLUSION

Based on the foregoing, it is

ORDERED that defendant Peltier's Motion for Severance From Capital Co-Defendants (Doc. #432) is granted. The Court will schedule a hearing to determine an appropriate trial date for defendant Peltier's trial.

*/s/ Lajuana M. Counts*
Lajuana M. Counts
United States Magistrate Judge